Chief Justice Bibb
delivered the Opinion of the Court.
in March, 1828, the administrators of Crutsinger sued Woolley, upon a writing dated 9th August, 1817, by which he bound himself to pay to Sally Crutsinger, or order, out: day after date, the sum of three hundred and fifty dollars, with legal interest thereon from the date, with this farther stipulation: “I also agree to let said Sally-have the held of mine she now occupies, until one hundred dollars of the above money is paid.”
The breach assigned is in not paying the moviey and interest one day after date, with an averment , that Woolley had not let either the intestate in her life time, or the administrator since her death, have the field; and that the whole debt and interest remains unpaid.
The defendant pleaded, that the agreement was usurious, that the field was sixteen acres of cleared land, of the value of thirty dollars per year, and that it was agreed that for every year’s forbearance of the said loan expressed in the note, the lender was to have the use and benefit of the field; and that, under said usurious agreement, she had actually enjoyed the use and benefit of the field from the date of the writing until her death; he also pleaded payment.
The defendant proved the yearly rent of the field to be of fhe value of thirty-two dollars; and also, the repeated declarations of the lender that the use of the field was for the interest of the money loaned; and also, that she had enjoyed the use and rodo *159 of the field from the date of the agreement and before, until her death in May, 1824.
Instructions of the comt as to the usury-
Verdict,
Judgment,
Motion for new trial,
Inconsistency oftheverdict.
The court instructed the jury, that upon the face of the covenant, the possession of the field was to be retained until the use and occupation should amount in value to one hundred dollars of the three hundred and fifty dollars; but that if they believed that the writing was only a shift or device to cover more than six per cent, it was usurious and void.
The verdict was taken on the 29th March, 1826, and the jury find specially that the interest is paid, and a credit to be given toward the principal, of sixteen dollars sixty-six cents; leaving the sum of three hundred thirty-three and a third dollars, which sum they find for the plaintiff.
The court rendered judgment for the debt in the declaration, to be discharged by the payment of three hundred and thirty-three and a third dollars, with interest at the rate of six per cent per annum, from the 29th March, 1826, until paid, besides costs.
The defendants moved for a new trial, because the court misconstrued the covenant, in their instructions to the jury. — Because the verdict was against the law and the evidence. — Thirdly, for discovery made of new evidence.
The court refused a new trial.
The acknowledgments of the obligee, her acts, the acts of the administrators, and the count in the action, all shew that the writing was but a device to receive usurious interest upon the loan of money. The lender enjoyed the use and received the rents of the field for about seven years before her death; these rents were of the yearly value of tliirty-two dollars. No credit is given for any part of the rents, th.e whole principal and interest is demanded, The jury found the value of the field to exceed tire interest; for the use and occupation in the life time of the obligee, is made to extinguish the interest to the time of the verdict, and leave a surplus to be carried to the account of the principal. Yet they did not find the agreement usurious. In this res *160 pect the verdict is clearly against the law and the evidence of the case.,
Writing devised to cover more than legal interest, void.
An obligation to this effect, “I promise to pay S. C. $300, with legal interest, one day after date, and let her, S. C., hare the field she noiy occupies till $100 of the money is paid,” is a device to cover usurious interest, and the court declares it void-■ —Note, the obligation bore date Aug 1817. See 2 Dig. L. K. 1226.
One member of the instructions of the court was very proper, that if they believed, from the evidence, that the writing was a device used to cover more than six per cent interest upon the loan, the writing was usurious and void.
But the other members of the instruction, as to the import of the covenant, was erroneous.
The covenant first obliges the borrower to pay the principal with legal interest from the date; next to pay, one day after date; and then comes the additional covenant, to let the lender have the field "until one hundred dollars of the above money is paid.” This covenant was executed in consideration of a lending and borrowing. And the writing taken in all its stipulations carries internal evidence that the parties did not expect nor intend that the money should be repaid the next day. Interest from the date, upon a note payable one day after date, connected with the stipulations about the field, show an understanding, other and different from the calculation of interest for the fraction of a day, and of the use and benefit of a field for a day or two. The negotiation, therefore, was in the form of the writing, a lending and borrowing for a day; but jn substance and in understanding of the parties, for forbearance for a longer period. The instruction of the court ought to have been predicated upon the facts which the evidence conduced to prove, and not upon au abstract theoretical case,
The question then is, what did the parties mean by that part of the writing relative to the field? The plaintiff, to avoid the plea of usury, asks the instruction, that the use and .occupation of the field was to be held until the value thereof would extinguish one hundred dollars of the sum expressed in the previous part of the covenant. Is that the fair construction of the writing? “I also agree to let her, said Sally, have the field of mine she now occupies, until one hundred dollars of the above money is paid,” are the words employed. Do theso *161 contain any prolongation of time for payment previously expressed, or any diminution of the sum of money previously expressed? Did these words divide and disjoin the debt and duty previously declared, and leave two hundred and fifty dollars, part thereof, to be paid with interest, on the next day, and one hundred dollars, another part thereof, to be commuted, postponed and satisfied out of rents and profits? Did Sally Crutsinger intend by this writing to advance one hundred dollars for use and occupation of tiic field, upon an undefined term and an undefined rent? The words employed ave not adapted to such end. The words shew an additional agreement by Woolley, to be performed on his part. “J also agree to let said Sally have” &c. bind Woolley to an additional act. They contain no easement for him, nor modification of the previous stipulation. If such easement and modification in favor of Woolley had been intended by the use and occupation of the field, then Sally Crutsinger ought to have stipulated; she should have said, I agree to occupy the field, and accept the rents and profits- thereof, until one hundred dollars of the above sum is thereby satisfied, and I agree not to demand one hundred dollars of the above money so long as said Woolley lets me have the field. Suppose two hundred and fifty dollars had been tendered one day after date, and accepted, and the obligor had demanded, that as to the balance of one hundred dollars, it should he delayed until the rents and profits of the field would extinguish it; suppose the obligee had, on the third day, sued on the covenant; could the obligor have defeated the action by plea that he paid two hundred and fifty dollars and that the obligee was, by his permission, in possession of the field according to the covenant? Would the obligee have been bound to wait until the rents and profits would extinguish the balance of one hundred dollars? Certainly not. The whole is stipulated as payable one day after date, with interest; the obligee has not stipulated, nor by implication, agreed to wait for one hundred dollars; she has not agreed to split the debt into two parts, the one payable the next day after date, in money, th4 *162 other part payable in rents and profits of the fieicL The whole sum is expressly promised to be paid in money with interest, and on the next day after date; the obligor has stipulated to let the obligee have the field until one hundred dollars of the sum was paid, dn this there is nothing by which the express covenant can be destroyed by implication.
Calculation's shewing the inconsistency of the verdict.
.Female usurers.
It is plain from the face of the covenant, that payment on the next day was not contemplated, .but forbearance of the sum was understood; and that the borrower was to have the field rent free, as a bonus for the forbearance. There is nothing on tbe face of the writing libe the conduct or acts between lessor and lessee for rent; it is not a payment by lessee in advance for an. indefinite time, at an undefined yearly rent, it is an agreement on the part of the borrower to pay a premium above tbe legal rate of interest on the loan. With this construction the acts of the parties have conformed. Although the lender held the field and received the use, and the rents for about sev'én years, no credit is given even for the interest. Although the value of the yearly rent exceeded the yearly interest by eleven dollars, yet no credit for any thing is allowed; instead of allowing annually a credit of eleven dollars towards the extinguishment of the principal, after the interest was paid, the plaintiff has claimed principal and interest; and the jury have allowed only a Credit of sixteen dollars sixty-six and two thirds cents, towards the principal, when it is clear from the evidence, that after payment of full interest on the whole lóan annually, an annual .surplus of ele-vén dollars for six years, remained; which each year sunk the principal and of course sank the quantum of interest for each succeeding yéar. Although the jury have found the annual rent to exc'ecd the interest, yet they have not found the usury. The verdict is against the law and the evidence of the case, and a new trial ought to have been granted.
The feelings which are so praiseworthy when displayed in extending protection to females in the ordinary walks of social life, must not be suffered to pervert the administration of the laws. How- *163 Sóever the feelings of compassion and tender- regard for the interest of females are to be cherished and commended within their proper sphere of action,_ they must not be suffered to bend the laws from their purpose. A female usurer is not excepted in the enactments and provisions of the statute. Courts, of justice must preserve and perform their proper functions in supervising the administration of the laws through the medium of the trial by jury.
Judgment andmandate,
Chapeze, for plaintiffs; Crittenden, for defendants-
It seems to this court that the construction given by the circuit court to the writing, set forth in the declaration, was erroneous; and that the verdict was against the law and the evidence of the Gase. It is therefore considered by the court, that the judgment of the circuit court be reversed; that the verdict be set aside and that the case be remanded for a venire facias de novo.
And it is further considered that the plaintiff in this court recover of the defendants his costs in this behalf expended &c.